IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WESTERN & SOUTHERN FINANCIAL
GROUP, INC.
400 Broadway
Cincinnati, Ohio 45202

-and-

IFS FINANCIAL SERVICES, INC.
303 Broadway, Suite 1100
Cincinnati, Ohio 45202

    Plaintiffs,

v.

TOUCHSTONE PARTNERS, LLC
260 East Brown Street, Suite 250
Birmingham, MI 48009

-and-

TOUCHSTONE PARTNERS, LLC
300 East Lombard Street, Suite 1111
Baltimore, MD 21202

-and-

TOUCHSTONE FUND MANAGEMENT, LLC
355 S. Old Woodward, Suite 270
Birmingham, MI 48009

    Defendants.

Case No. C1-07 294

Judge S. ARTHUR SPIEGEL

Magistrate _____

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND
FALSE DESIGNATION OF ORIGIN**

Plaintiffs Western & Southern Financial Group, Inc. ("Western & Southern") and IFS

Financial Services, Inc. ("IFS") (collectively "Plaintiffs"), for their complaint against Defendants

CINLibrary 1715006v.1

TouchStone Partners, LLC ("TS Partners") and Touchstone Fund Management, LLC ("TS Fund") (collectively, "Defendants") state as follows:

## NATURE OF ACTION

1.  Western & Southern is one of the most well-known and respected financial services organizations in the United States. With a heritage that dates back to 1888, Western & Southern provides life insurance, annuities, mutual funds and investments to individuals and businesses throughout the country. Western & Southern's subsidiary, IFS, was established in 1991 and includes, as one of its business units, Touchstone Investments, comprised of Touchstone Securities, Inc. and Touchstone Advisors, Inc. (collectively "Touchstone"). Touchstone Securities, Inc. is a registered broker-dealer and a member of the NASD and SIPC. Touchstone Advisors, Inc. ("Touchstone Advisors") is an investment adviser registered with the Securities and Exchange Commission ("SEC").

2.  Touchstone offers a variety of mutual funds under the Touchstone name (collectively, the "Touchstone Funds") across the investment spectrum, including the Touchstone Growth Opportunities Fund and the Touchstone Value Opportunities Fund. In total, Touchstone offers 39 funds with approximately $8 billion in assets under management as of February 28, 2007, providing a broad selection of investment styles and strategies for retail and institutional investors. Touchstone Funds are sold nationally through a network of broker-dealers, financial planners, financial institutions, registered investment advisers, consultants, private banks and 401(k) alliances. IFS owns four federal trademark registrations for Touchstone covering various financial products and related services, including mutual funds, variable annuities and fixed annuities.

3.  Defendant TS Partners is a registered investment adviser with the SEC. Defendants TS Partners and TS Funds, which are not affiliated or associated with Plaintiffs, offer

or have offered their clients a group of funds called the "TouchStone Opportunity Funds". The TouchStone Opportunity Funds offered by Defendants include TouchStone Opportunity Fund, LLC; TouchStone Opportunity Fund II, LLC and TouchStone Opportunity Fund III, LLC; TouchStone Opportunity Investments, LLC; TouchStone Opportunity Investments II, LLC; and TouchStone Opportunity Investments III, LLC (collectively, the "TS Opportunity Funds"). The general partner or manager of the three TouchStone Opportunity Funds is Defendant TouchStone Partners, LLC. The general partner or manager of the three TouchStone Opportunity Investments funds is Defendant Touchstone Fund Management, LLC.

4. The TS Opportunity Funds invest in speculative and potentially risky investments such as leveraged buyout loans, the indebtedness of distressed/bankrupt companies and investments in non-performing and sub-performing loans. These investments are different from the stock and fixed income-based portfolios offered by Touchstone. Touchstone's funds are registered with the SEC as open end investment companies, and are offered pursuant to a prospectus fully disclosing each fund's investment objectives, strategies, risks and expenses. Defendants' funds rely on statutory exemptions from registration with the SEC pursuant to Sections 3(c)(1) and/or 3(c)(7) of the Investment Company Act of 1940, and therefore are not subject to the same level of regulatory oversight to which the Touchstone Funds are subject.

5. Defendants' unauthorized use of the Touchstone name for its investment services is likely to confuse customers and cause them to believe that Defendants are sponsored by or affiliated with Touchstone. At least six of Defendants' investment vehicles are named using some variant of the "TouchStone Opportunity" name; the investment adviser to some or all of these funds is TouchStone Partners, LLC; and the general partner or manager of some or all of these funds is either TouchStone Partners, LLC or Touchstone Fund Management, LLC. In

3

addition, the entity responsible for servicing and managing the assets acquired by the Funds and their co-investors is TouchStone Asset Management, a wholloy-owned subsidiary of TS Partners. Clearly, Touchstone is entitled to a permanent injunction to prevent Defendants' unauthorized and pervasive use of the famous and well-respected Touchstone name to identify themselves and market their products and services.

## THE PARTIES

6. Western & Southern is a corporation organized under the laws of the State of Ohio with its principal place of business at 400 Broadway, Cincinnati, Ohio 45202.

7. IFS is a subsidiary of Western & Southern and is a corporation organized under the laws of the State of Ohio with its principal place of business at 303 Broadway, Suite 1100, Cincinnati, Ohio 45202, incorporated on June 25, 1991. Touchstone Advisors, Inc. ("Touchstone Advisors"), a wholly owned subsidiary of IFS, is a corporation organized under the laws of the State of Ohio with its principal place of business at 303 Broadway, Suite 1100, Cincinnati, Ohio 45202, incorporated on December 13, 1993 as "IFS Investment Advisors, Inc." and registered as an investment adviser with the SEC on February 16, 1994. IFS Investment Advisors changed its name to Touchstone Advisors, Inc. on June 6, 1994. A copy of Touchstone Advisors' current Form ADV is attached as Exhibit A.

8. TS Partners, upon information and belief, is a Delaware LLC that was formed on June 30, 1998 (copy of State of Delaware Secretary of State record attached as Exhibit B). TS Partners is the product of a merger of two companies: G.C. Timmis & Co. of Birmingham, Michigan and Carnegie Morgan Partners, of Baltimore, Maryland. Defendant Touchstone Fund Management, LLC is an affiliate of TS Partners. In addition to its private equity fund business, Defendant TS Partners also engages in commercial real estate loan origination. Defendants' SEC investment adviser registration indicates it may offer its TS Opportunity Funds to investors

4

throughout the United States[confirm], including Ohio. In addition, Defendants solicit commercial loan transactions within the State of Ohio and, upon information and belief, have portfolio assets located within the State of Ohio.

## JURISDICTION AND VENUE

9. This is an action for infringement of trademarks registered under the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, 15 U.S.C. § 1114(a) and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a).

10. This court has jurisdiction over this matter under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1).

## BACKGROUND FACTS

### The Touchstone Marks

11. Western & Southern is a Fortune 500 company and one of only eleven life insurance groups in the world with a Standard & Poor's AA+ or higher rating  Western & Southern is comprised of more than a dozen financial services affiliates that provide life insurance, annuities, investment advice and investments under a number of trademarks, including the Touchstone trademark. Western & Southern also offers private equity investments and commercial real estate loan origination services through certain of its financial services affiliates.

12. Touchstone Investments was ranked among the top 25 Wholesale Mutual Fund firms in long-term fund net sales in 2005. Touchstone offers mutual funds that employ a wide range of investment styles and asset classes, and are managed by carefully screened and rigorously monitored independent portfolio managers who act as sub-advisers to the funds. The Touchstone Funds are sold nationally through a network of more than 16,000 broker-dealers, financial planners, financial institutions, registered investment advisers, consultants, private

banks and 401(k) alliances. Touchstone operates a website at www.touchstoneinvestments.com where a potential investor can go to learn more about Touchstone Investments and the Funds. Investors in Touchstone Funds can also access their personal account information on a secure section of the website. A printout of Plaintiff's website home page is attached as Exhibit C.

13. Touchstone Investments' process for selecting and monitoring its Funds' sub-advisers is unique among mutual fund companies. Through Touchstone Advisors, Inc., a registered investment adviser, Touchstone Investments evaluates potential sub-advisers with various quantitative measurements, such as comparing their performance against their peers and benchmark standards, and also analyzes their qualitative resources, such as knowledge level and compliance with applicable investment rules and strategies. This selection and monitoring process allows Touchstone Investments to offer to its investors mutual funds with solid, sustainable performance within each investment option. On its website at www.touchstoneinvestments.com, Touchstone Investments describes this selection and monitoring process as the "Touchstone Process." A printout of the Touchstone Investments web pages relating to its selection and monitoring process is attached as Exhibit D.

14. IFS owns the following federally registered trademarks and service marks for use in connection with the Touchstone Funds:

> TOUCHSTONE- Registration No. 1,977,192, registered May 28, 1996 for financial services, namely investment, management and distribution regarding mutual funds, variable annuities and fixed annuities; and brokerage trade clearing services;
>
> THE TOUCHSTONE FAMILY OF FUNDS, 1,974,147 registered May 14, 1996 for financial services, namely mutual fund investment, brokerage, and distribution.
>
> TOUCHSTONE INVESTMENTS – Registration No. 2,792,701, registered December 9, 2003 for financial services, namely, investment management and distribution regarding mutual funds, variable annuities and fixed annuities; and brokerage and brokerage trade clearing services.

        TOUCHSTONE SELECT – Registration No. 2,200,384, registered October 27, 1998 for financial services, variable annuity investments, brokerage and distribution.

Certified copies of the certificates of registration for each of these trademarks (the "Touchstone Registered Marks") are attached to this complaint as Exhibits E-H. In addition, Touchstone has used other trademarks containing the word "Touchstone" for various financial services and has common law trademark rights in such terms (the registered trademarks and common law trademarks are collectively referred to as the "Touchstone Marks")

15. The certificates of registration identified in the preceding paragraph are valid and subsisting, and IFS owns record title to the registered trademarks described above.

16. The certificates of registration are prima facie evidence of the validity of the Touchstone Registered Marks, of IFS's ownership of the Touchstone Registered Marks, and IFS's exclusive right to use the Touchstone Registered Marks in connection with the goods and services specified in the certificates of registration enumerated above pursuant to 15 U.S.C. § 1115(a), as well as constructive notice of the registrant's claim of ownership under 15 U.S.C. § 1072.

17. Registration Nos. 1,977,192; 1,974,917; and 2,200,384 are incontestable, which provides conclusive evidence of their validity under 15 U.S.C. § 1115(b).

18. Plaintiffs have used Touchstone as a trademark and service mark continuously and exclusively in connection with Touchstone's mutual fund products and financial services since 1994. Touchstone currently has approximately $8 billion in assets under management and uses the Touchstone Marks solely in connection with offering the Touchstone Funds and related products and services throughout the United States.

19. Plaintiffs maintain strict control over the use of the Touchstone Marks. The Touchstone Funds are offered to the public only through registered broker dealers, financial planners, institutions, registered investment advisers, consultants, private banks and 401(k) alliances, using prospectuses that make extensive and prominent use of the Touchstone Marks.

20. Since 1994, the Touchstone Funds have been advertised extensively throughout the United States. In addition to various trade publications, Touchstone Funds are listed in mutual fund tables and posted on industry databases such as Morningstar.com and smartmoney.com and are advertised in direct mailings, promotions, NASD-regulated advertising, conference sponsorships and other marketing and public relations activities. The Touchstone Funds have also received coverage in the Investor's Business Daily, Investment News, Barron's, Business Week, and Kiplinger's Personal Finance, and Touchstone portfolio managers have been panelists or guests on CNBC and Fox News. Exhibit I. The Touchstone Funds have been the subject of extensive coverage in the financial press, including recent articles in the Wall Street Journal, Marketwatch, www.financial-planning.com, and SmartMoney.com. Exhibit J. Because of this extensive and uniform promotion, marketing and advertisement, the investing public and those persons interested in purchasing mutual fund products have come to associate the Touchstone Marks with the Touchstone Funds.

21. The Touchstone Growth Opportunities Fund and the Touchstone Value Opportunities Fund are so-called because they invest opportunistically in equity securities regardless of any particular stock's market capitalization. The Touchstone Growth Opportunities Fund and the Touchstone Value Opportunities Fund seek to achieve their objectives by investing in small, mid or large cap stocks. In this context, the term "Opportunity" is used as a shorthand way to refer to funds that can find potentially attractive opportunities in any number of possible

CINLibrary 1715006v.1

investment styles, categories or ranges. A printout of the Touchstone Investments web pages related to the Touchstone Growth Opportunity Fund is attached as Exhibit K.

22. Touchstone spends more than $1.5 million per year on advertising, marketing and promotional materials with the Touchstone Marks in connection with offering and promoting its Touchstone Funds through print ads, web development, conferences, sponsorships, promotional items, and other means throughout the United States.

23. The advertising and promotion of the Touchstone Funds through the use of the Touchstone Marks for more than twelve years has caused the investing public and investment professionals to recognize the Touchstone Marks as an indicator of a diverse and well-rounded group of financial products and services, and to seek out and purchase Touchstone mutual funds rather than those of other providers.

24. The Touchstone Marks have become and are associated solely and exclusively with Plaintiffs in the minds of consumers and investment professionals interested in financial investing and related services.

## Defendants' Infringing Activities

25. Defendant TS Partners is a federally registered investment advisor that coordinates the activities of several funds. Through the TS Opportunity Funds, Defendants TS Partners and TS Fund make investments in a variety of highly-speculative endeavors, including but not limited to non-performing and sub-performing commercial real estate loans; non-performing and sub-performing residential real estate loans and consumer loans; pools of performing, sub-performing and non-performing commercial and industrial debt; indebtedness of financially-troubled or bankrupt companies; businesses experiencing financial distress; non-

CINLibrary 1715006v.1

investment grade debt; securities and debt obligations of foreign issuers; debtor-in-possession (DIP) financing; leveraged buy-out loans; and similar ventures.

26. While it appears that TS Partners has been in the asset management business for some time, upon information and belief, TS Partners and TS Fund did not begin widely offering the TS Opportunity Funds until early 2004, and TS Partners did not make an initial application for Investment Adviser registration with the SEC until March of 2006 (a copy of its Form ADV is attached as Exhibit L). According to the Internet Archive, Defendants' website at www.touchstonepartners.net was merely a "placeholder" site until March 2004. At that time, the current website went "live", and Defendants began offering their TS Opportunity Funds on a national basis.

27. Defendants' TS Opportunity Funds and Plaintiff's Touchstone Value Opportunities Funds and Touchstone Growth Opportunities Funds would potentially appeal to similar investors – those seeking to invest opportunistically in a range or variety of possible investments – which is telegraphed to the investor by the use of the term "Opportunity" in the funds' names. Thus, the possibility for consumer confusion is evident.

28. A Google search of the phrase "Touchstone Opportunity" as of February 26, 2007 provides as its first reported result a link to the website for Defendant TS Partners and the TS Opportunity Funds. The third result is for a job opening as a private equity analyst with Defendant TS Partners. A link to Plaintiff's Touchstone Growth Opportunities Fund is listed as the seventh result. Again, the possibility for consumer confusion is evident.

29. Despite repeated demands from Plaintiffs, Defendants are continuing their infringing use of the Touchstone Registered Marks.

## COUNT ONE
## TRADEMARK INFRINGEMENT

30. Plaintiffs incorporate the allegations contained in paragraphs 1 through 29 as if fully restated herein.

31. Upon information and belief, Defendants' use of the Touchstone trademark in connection with offering their TS Opportunity Funds was with knowledge of Plaintiffs' well-known use of the Touchstone Marks in the financial services industry.

32. Defendants' use of the Touchstone trademark will create a likelihood of confusion through an association of sponsorship, affiliation, licensing or endorsement by Plaintiffs in an appreciable number of consumers interested in opportunity-type investments, as well as in all potential consumers who view the website located at www.touchstonepartners.net, which bears numerous instances of the Touchstone Marks in connection with the offering of Defendants' TS Opportunity Funds. Such consumers will also assume that the speculative investments in the Defendants' TS Opportunity Fund portfolios are somehow affiliated with, sponsored, licensed or endorsed by Plaintiffs, or that Plaintiffs' sub-advisers are affiliated with Defendant, which is false.

33. The goodwill of the Touchstone Registered Marks is of enormous value, and Plaintiffs are and will continue to suffer immediate and irreparable harm should Defendants' actions continue. The more speculative nature of Defendants' unauthorized offering of so-called "opportunity funds" under the Touchstone trademark and on the www.touchstonepartners.net website could result in significant and irreparable harm should they incur publicized financial losses or impairment or otherwise be the subject of adverse publicity, scandal or regulatory action. Although as private equity funds, the TS Opportunity Funds do not receive the same level of marketing or public attention as publicly available funds, neither the Defendants nor the

TS Opportunity Funds are wholly immune from publicity and/or regulatory review. Should any adverse action occur with respect to TS Partners, TS Fund, any of the "Touchstone" affiliates or the TS Opportunity Funds, the public and press would very likely associate or confuse Plaintiffs' Touchstone Growth Opportunities Fund and Touchstone Value Opportunities Fund with Defendants' TS Opportunity Funds, and shareholder redemptions, inquiries and other investor actions deleterious to Plaintiffs' interests would be highly probable. Such misunderstandings, and the resulting adverse consequences to Plaintiffs, are all the more understandable because Plaintiffs' Fort Washington Investment Advisors subsidiary also offers investments in private equity funds.

34. The acts of Defendants in their unauthorized use of Touchstone as a trademark in connection with offering their TS Opportunity Funds are intended to and will divert to the Defendants the benefit of the business reputation and goodwill symbolized by the Touchstone Marks which belong exclusively to Plaintiffs. Such acts will confuse existing and potential investors in Defendants' TS Opportunity Funds into thinking that Defendants' highly speculative portfolios are somehow backed by, underwritten by, licensed by, endorsed by, sponsored, affiliated with or connected with Plaintiffs.

35. Defendants' infringing use of the Touchstone trademark, and offering their TS Opportunity Funds over the Internet under the Touchstone trademark and domain name will likely continue unless enjoined by this Court.

36. Plaintiffs are entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorneys' fees.

CINLibrary 1715006v.1

## COUNT TWO
## FALSE DESIGNATION OF ORIGIN

37. Plaintiffs incorporate the allegations contained in paragraphs 1 through 36 as if fully restated herein.

38. Defendants' use of the Touchstone trademark in connection with its offering of their TS Opportunity Funds falsely represents that such services originate with, are sponsored, endorsed, underwritten or licensed by Plaintiffs.

39. Defendants are unauthorized users of the Touchstone trademarks and Plaintiffs cannot exercise any control over the nature and quality of Defendants' investment advice, portfolio selections, financial services, regulatory compliance, or the performance of Defendants' TouchStone Opportunity Funds.

40. Upon information and belief, Defendants' false designation of origin has been willful and deliberate, designed specifically to trade upon the consumer goodwill enjoyed by Plaintiffs among consumers, financial planners, sophisticated investors, and in the investment community generally.

41. Plaintiffs' goodwill among consumers, financial planners, sophisticated investors, and in the investment community generally is of enormous value, and Plaintiffs will suffer irreparable harm if Defendants' false designation of origin as to the Touchstone Registered Marks is allowed to continue.

42. Defendants' false designation of origin will likely continue unless enjoined by this Court.

43. Plaintiffs are entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

WHEREFORE, Plaintiffs request that the Court order:

1. The issuance of a permanent injunction enjoining Defendants, their officers, directors, and their agents, servants, employees, successors, representatives and assigns, and all others in concert and privity with them from using the Touchstone trademark in any manner in the advertising, promoting or selling of any financial services, and from infringing or falsely designating the origin of the Touchstone Registered Marks;

2. That Defendants immediately cease use of the word Touchstone or TouchStone as a trademark, trade name and corporate name, and file appropriate documents to effect such changes with all governmental agencies within seven (7) days of this Order.

3. That Defendants account to Plaintiffs for its profits, the actual damages suffered by Plaintiff and as a result of Defendants' acts of infringement and false designation of origin, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Plaintiffs' known rights;

4. The issuance of a permanent injunction enjoining Defendants from using or seeking to register, as a trademark, trade name, corporate name or domain name, any of the Touchstone Registered Marks or any term that includes the word Touchstone or TouchStone for financial services or investment opportunities, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship, licensing or affiliation of Plaintiffs with Defendants;

5. The issuance of an Order directing the domain name registrar of "touchstonepartners.net" to immediately lock this domain name and transfer it to Plaintiffs;

6. That Defendants surrender all copies of any materials mentioning financial services that they have created or obtained bearing the Touchstone Marks for destruction, and that they be enjoined from creating, purchasing or acquiring such materials in the future or placing them on a website;

7. The issuance of an Order directing the local telephone company to immediately disconnect telephone numbers 248.646.9200; 410.244.0000 and any other telephone number currently assigned to Defendants, and not forward any calls from such disconnected numbers to any subsequent telephone number issued to Defendants;

8. That Defendants contact all local, state and federal agencies and regulatory bodies and advise them that they are not connected or affiliated with Plaintiffs;

14

9. That Defendants provide a list of all clients of any of their products and services and send each client a letter, approved in advance by Plaintiffs, advising that they are not connected or affiliated with Plaintiffs and informing each client of Defendants' new name;

10. That Defendants pay compensatory and treble damages to Plaintiffs;

11. That Defendants disgorge all profits realized from its offering of financial consulting services under the Touchstone or TouchStone name;

12. That Defendants pay Plaintiffs' attorneys' fees, together with the costs of this suit; and

13. All other and further relief as may be just and equitable.

Respectfully submitted,

Joseph R. Dreitler, Trial Attorney (0012441)
Mary R. True (0046880)
Brian J. Downey (0069163)
FROST BROWN TODD, LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
Telephone: (513) 651-6800
Facsimile: (513) 651-6981

Attorneys for Plaintiffs, Western & Southern Financial Group, Inc., *et al.*

CINLibrary 1715006v.1